[Cite as *State v. Grabe*, 2020-Ohio-4435.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

KYREE GRABE,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 MA 0115**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 18 CR 1208

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Judges and Judge Timothy P. Cannon, Judge of
the Eleventh District Court of Appeals, Sitting by Assignment.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul J. Gains,* Mahoning County Prosecutor*, Atty. Ralph M. Rivera,* Assistant
Prosecuting Attorney, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503,
for Plaintiff-Appellee and

*Atty. Wesley Johnston*, P.O. Box 6041, Youngstown, Ohio 44501, for Defendant-Appellant.

Dated: September 16, 2020

_____

**Robb, J.**

{¶1} Defendant-Appellant Kyree Grabe appeals the decision of the Mahoning County Common Pleas Court denying his motion to withdraw a guilty plea. He contends the trial court abused its discretion in weighing the factors relevant to his presentence plea withdrawal motion. For the following reasons, the trial court's decision is affirmed.

<u>STATEMENT OF THE CASE</u>

{¶2} On November 29, 2018, Derrick Franklin was shot as he exited a bar in Youngstown. Appellant drove the victim to the hospital, where the victim died. A police detective quickly scanned through the surveillance footage from the bar while downloading it for later perusal. The detective observed that the victim had been shot by someone located outside of the bar just as he was exiting and then fell back into the bar. When the detective arrived at the hospital, he interviewed Appellant. Appellant said he did not witness the shooting as he was in a different room at the bar. (Plea W/d Tr. 22).

{¶3} The detective then went to the police station and watched the entire downloaded video. He noticed the victim started removing something from his pocket as he walked toward the exit. In addition, the detective realized that the person who was walking to the door directly behind the victim was Appellant. (Plea W/d Tr. 25, 34). Appellant appeared to be looking directly at the incident as it occurred. After the victim fell to the floor, Appellant ran away from the door and proceeded deeper into the bar. (Plea W/d Tr. 26). Forty seconds later, Appellant approached the victim, felt around the area where the victim was lying, went through the victim's pockets, and took something.

{¶4} The detective called Appellant the next day and asked him to come to the police station. Over the phone, Appellant reiterated that he was not in the same room as the victim and did not see anything. Yet, Appellant told the victim's family that he saw what happened but "would not tell the police because people on the streets already think he's a snitch." (Plea W/d Tr. 28, 30). The family asked Appellant why he went through the victim's pockets and took the victim's phone (from which calls had been made); he

<u>Case No. 19 MA 0115</u>

initially denied doing so but eventually handed the phone to the family. (Plea W/d Tr. 27, 31).

{¶5} On December 13, 2018, Appellant was charged with tampering with evidence and obstructing justice. He waived a preliminary hearing and was bound over to the common pleas court where he was indicted on January 17, 2019. As to the third-degree felony of tampering with evidence, Appellant was charged with violating division (A)(1) of R.C. 2921.12, which states: "No person knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation * * *."

{¶6} Regarding obstructing justice, the indictment charged Appellant with a violation of division (A)(5) of R.C. 2921.32, which states: "No person with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime or to assist another to benefit from the commission of a crime, shall * * * Communicate false information to any person * * *." This offense was a third-degree felony as "the crime committed by the person aided was aggravated murder, murder, or a felony of the first or second degree." R.C. 2921.32(C)(4).

{¶7} Crim.R. 11 negotiations occurred at pretrials on March 28 and May 20, 2019. Subsequently, on May 31, 2019, Appellant entered a written plea agreement wherein he pled guilty to the obstructing justice charge. In return, the state agreed to dismiss the tampering with evidence charge. The state also agreed to recommend a sentence of two years and voice no objection to judicial release after one year in prison. Upon accepting the plea, the court ordered a presentence investigation, reinstated Appellant's bond (which had been revoked due to a bond violation), and set the sentencing hearing for July 10, 2019.

{¶8} On July 9, 2019, Appellant's appointed attorney, who represented him since the waiver of a preliminary hearing in the municipal court, filed a motion to withdraw as counsel upon Appellant's request. A newly retained attorney filed a notice of appearance and a motion for a continuance the same day. He also filed a motion to withdraw the guilty plea, arguing: Appellant was professing his innocence and expressing his desire for a jury trial; his judgment in accepting the plea agreement was impaired by fear and

panic; and thus, his plea was not freely and voluntarily entered. The state opposed the motion, urging that nearly every factor weighed against Appellant's motion. It was noted that although the state's case may not be prejudiced by a plea withdrawal, the prosecution previously withdrew a motion to revoke bond and allowed Appellant to remain free pending sentencing based upon Appellant entering the plea agreement.

{¶9} On August 26, 2019, the trial court held a hearing on Appellant's motion. Appellant's attorney presented arguments, including that Appellant did not act in order to aid the shooter. The state presented the testimony of the detective, who relayed the aforementioned facts of the case to rebut Appellant's claim of innocence. The state also presented the testimony of Appellant's former counsel, who explained his experience as a criminal attorney and said he was unaware of Appellant's emotions of fear or panic as related to the entry of the plea.

{¶10} In a September 24, 2019 judgment entry, the trial court denied the motion to withdraw the guilty plea. The court considered the relevant factors, finding: Appellant's attorney was a highly competent and experienced criminal trial lawyer (averaging three to five jury trials per year for thirty years and was death-certified); there was a full Crim.R. 11 plea hearing where he waived his rights; Appellant understood the nature of the charge and the potential sentence; Appellant was familiar with the criminal justice system (as evidenced by the presentence investigation report); he was provided a full plea withdrawal hearing, where the state presented evidence and Appellant had the opportunity to cross-examine the witnesses and to present his own evidence; the evidence shows he lied to the police about the shooting while they were investigating a murder and took evidence from the victim's body; the plea withdrawal motion was filed forty days after the plea which was not shown to be reasonable; the motion was based on a mere change of heart; and there was no reasonable or legitimate basis for withdrawal of the plea.

{¶11} The sentencing hearing proceeded the next day, and the court sentenced Appellant to two years in prison as recommended by the state under the plea agreement. Appellant received fifty-nine days of jail time credit and was advised to apply for judicial release. Appellant filed a timely notice of appeal from the September 26, 2019 sentencing entry.

ASSIGNMENT OF ERROR

{¶12}  Appellant's sole assignment of error provides:

"The trial court erred by denying Grabe's Motion to Withdraw Plea."

{¶13}  A plea withdrawal motion is provided for by Crim.R. 32.1, which states that a motion to withdraw a guilty plea can only be made prior to sentencing unless there is a manifest injustice.  The Ohio Supreme Court has recognized that a pre-sentence plea withdrawal motion "should be freely and liberally granted."  *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992).  Nonetheless, the Court explained that a defendant does not have an absolute right to withdraw a guilty plea merely because he made the motion prior to sentencing.  *Id.*  There must be a reasonable and legitimate basis for plea withdrawal.  *Id.*

{¶14}  The decision on a plea withdrawal motion lies within the sound discretion of the trial court and will not be disturbed by a reviewing court absent an abuse of discretion.  *Id.* ("It is not the role of an appellate court to conduct a de novo review of a trial court's decision").  A mere error in judgment is not an abuse of discretion; rather, we are permitted to reverse only if the denial of plea withdrawal was unreasonable, arbitrary, or unconscionable.  *Id.*  The good faith, credibility, and weight of the movant's assertions in support of a Crim.R 32.1 motion are primarily questions for the trial court.  *Xie*, 62 Ohio St.3d at 525 (a pre-sentence motion case), applying *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977) (a post-sentence motion case).

{¶15}  This court has adopted a non-exclusive list of factors to be weighed in reviewing a decision on a presentence plea withdrawal motion:  (1) the representation provided by defense counsel; (2) the defendant's understanding of the nature of the charges and the potential sentence; (3) the extent of the plea hearing; (4) the extent of the plea withdrawal hearing; (5) whether the trial court gave full and fair consideration to the motion; (6) the reasons for the motion; (7) whether the accused was perhaps not guilty or had a complete defense to the charge; (8) whether the timing of the motion was reasonable; and (9) whether the state will be prejudiced by withdrawal.  *State v. Morris*, 7th Dist. Mahoning No. 13 MA 19, 2014-Ohio-882, ¶ 21, citing *State v. Fish*, 104 Ohio App.3d 236, 240, 661 N.E.2d 788 (1st Dist.1995).

**{¶16}** As the list is non-exclusive, a court can find other factors relevant as well. *Morris*, 7th Dist. No. 131 MA 19 at ¶ 22. "For instance, the length of time between the charges and the plea and the various occurrences on the docket prior to the plea are also relevant considerations that can support a determination that there existed thoughtful consideration of the plea and the ramifications of it versus taking the case to trial." *Id.*, citing *State v. Lundy*, 7th Dist. No. 07MA82, 2008-Ohio-1535, ¶ 23. Since the evaluation involves the trial court's discretionary weighing of the factors, no one factor is conclusive. *Morris*, 7th Dist. No. 131 MA 19 at ¶ 22, citing *State v. Leasure*, 7th Dist. No. 01BA42, 2002-Ohio-5019, ¶ 19. Therefore, a mere lack of prejudice to the state's case will not mandate plea withdrawal. *Id.* We proceed to review the factors in light of the particular circumstances in this case.

**{¶17}** First, Appellant was represented by a highly experienced and competent defense attorney. The court related the attorney's background after hearing him testify at the hearing. The same attorney who represented Appellant in the municipal court prior to being bound over was appointed to represent him after indictment. In addition, Crim.R. 11 negotiations occurred at two pretrials held before the day of the guilty plea. And, Appellant was charged with two offenses but was able to negotiate the dismissal of the tampering with evidence charge, notwithstanding the video footage showing his rifling through the victim's pockets and his admission to taking the victim's phone. Both charges were third-degree felonies. Appellant was also able to negotiate the state's recommendation of a non-maximum sentence, a pledge to not oppose judicial release, and the reinstatement of bond.

**{¶18}** As to the extent of the Crim.R. 11 hearing, Appellant's new counsel acknowledged there was no issue with the plea hearing. He also acknowledged Appellant's understanding of the potential penalties. As to an understanding of the nature of the charges, Appellant told the court at the plea hearing that he understood what he was charged with and he understood that by pleading guilty to the charge he was completely admitting that he committed the offense. At the plea withdrawal hearing, Appellant's new attorney said there was an issue with Appellant's understanding of the nature of the charges as related to the facts of the case, stating he had a different opinion of the facts.

**{¶19}** This also relates to the factor regarding whether the defendant is innocent or has a complete defense. Noting that Appellant was the victim's friend and was not charged in the shooting, the defense claims Appellant had no intent to hinder the investigation of the shooter when he communicated false information. In his reply to the state's response to his plea withdrawal motion, he said he was innocent because there was no mens rea. He also suggested that he did not in fact hinder the investigation because the police had better evidence of his presence (the video) and that he had no idea there was a police investigation (or that the phone would be relevant).

**{¶20}** Initially, we note that obstructing justice does not require the offender to have actually hindered the investigation. *See* R.C. 2921.32(A)(5) (communicate false information "with purpose to hinder"). *See also State v. Heckathorn*, 7th Dist. Columbiana No. 17 CO 0011, 2019-Ohio-1086, ¶ 57.[1] Furthermore, "a person can have multiple purposes or purposely do one act in order to accomplish another act. A person can specifically intend to hinder an investigation of another for the additional purpose of hindering the investigation of herself and still have purpose to hinder the investigation of the other person." *Id.* at ¶ 60. For instance, an eyewitness may communicate false information to the police with a purpose to hinder an investigation in order to show that he is not the "snitch" that "people on the streets already think" he is due to past cooperation with the police or with hopes the shooter will not take revenge upon him as an eyewitness who "snitches." Or, a person may hinder an investigation of a shooter by communicating false information with the intent to avoid an investigation of himself for some aspect of that offense, for a prior offense which may have triggered the shooting,

---

[1] Likewise, the dismissed charge of tampering with evidence does not require value of the evidence to actually be impaired in the long-run. *See* R.C. 2921.12(A)(1) (alter, conceal, or remove with purpose to impair the value or availability of evidence). *State v. Boggs*, 9th Dist. Lorain No. 19CA011453, 2020-Ohio-616, ¶ 17 (the fact that the defendant did not actually succeed in impairing the value or availability of the evidence is not dispositive); *State v. Kelly*, 10th Dist. Franklin No. 07AP-840, 2008-Ohio-4683, ¶ 41 ("that their value as evidence was not actually impaired is not relevant to whether appellant was guilty of tampering with evidence based on his removal of those items from the scene of the murder"). Regardless, the evidence (the phone) was not available to police during the rush to find the shooter because Appellant removed it from the victim's body. The detective noted how important a murder victim's phone can be to an investigation, and a reasonable person would understand that a victim's phone is of value to the investigation. Also, upon witnessing such a shooting, every citizen would know an investigation is either in progress (upon the 911 call) or is "about to be or likely to be instituted."

or even for a contemplated future offense against the shooter. The fact that a person appears to be a decedent's friend before a shooting does not necessarily mean a lack of involvement in the circumstances leading up to the death or a lack of intent to hinder the investigation of the shooter. We note the detective's investigation of the shooter included the premise that the shooting could have been self-defense (i.e., the shooter protecting himself from the decedent). The decedent removed some object from his pocket as he exited the bar and was immediately shot. Appellant soon searched the decedent's pockets and the area around his body, and Appellant did in fact take at least one item from the body.

{¶21} A person's intent rests in their mind and is typically established by rational inferences and circumstantial evidence, which has the same probative value as direct evidence. *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). Although a jury could find that Appellant's false communications were not made with a "purpose to hinder" the investigation of the shooter (for the obstructing justice charge) and/or that he did not remove the phone "with purpose to impair its value or availability as evidence" (for the tampering with evidence charge), these elements were known to Appellant when he was charged in December of 2018, when he was indicted in January of 2019, and when he plead guilty to one of the felonies in May 2019 (in return for dismissal of the other felony and other consideration). The good faith, credibility, and weight of the movant's assertions in support of a Crim.R 32.1 motion are primarily questions for the trial court. *See Xie*, 62 Ohio St.3d at 525. The trial court could reasonably conclude that Appellant merely had a change of heart as to whether he should take his chances by allowing the charges to be presented to a jury.

{¶22} Furthermore, the reason expressed in the plea withdrawal motion about fear and panic causing him to enter a plea which was not voluntary was not reiterated at the hearing. His former attorney saw no indication of this claim. Plea discussions took place during three different court proceedings. As noted by the trial court, Appellant had experience in the criminal justice system. The judge, who engaged Appellant in a colloquy at the plea hearing, did not observe the emotion of panic or fear of such a nature that the plea could be rendered involuntary. The trial court could use its first-hand

observations and discretion to find this claim lacked credibility.  *See Xie*, 62 Ohio St.3d at 525.

**{¶23}**  Moreover, Appellant filed his plea withdrawal motion nearly six weeks after entering the plea agreement.  At the time of his May 31, 2019 plea, the court scheduled the sentencing hearing for July 10, 2019.  Yet, Appellant waited until the day before sentencing to file his plea withdrawal motion.  We have opined that a plea withdrawal motion filed six weeks after a plea was entered and on the day of sentencing "is a last minute motion practice that should be discouraged absent unusual circumstances." *Morris*, 7th Dist. No. 131 MA 19 at ¶ 30, citing *State v. Lundy*, 7th Dist. No. 07MA82, 2008-Ohio-1535, ¶ 22.  Appellant set forth no reason why he waited until the day before sentencing to file his motion or to retain the new attorney, who sought a continuance and extended the case even longer while Appellant was out on bond (a bond with conditions he repeatedly violated).  As the trial court concluded, the timing of the plea withdrawal motion was not reasonable.

**{¶24}**  Appellant takes no issue with the extent of the plea withdrawal hearing. Since the trial court granted the motion for continuance filed with the plea withdrawal motion, Appellant had an abundance of time to prepare for the plea withdrawal hearing. The hearing was unrestricted and unrushed; no limits were placed on Appellant's ability to present oral arguments and evidence.  The state presented the testimony of the detective and Appellant's former defense attorney, and Appellant had the opportunity to cross-examine these witnesses.  Appellant clearly received a full and fair plea withdrawal hearing.

**{¶25}**  In addition, the trial court gave full and fair consideration to Appellant's motion.  This is evidenced by the aforementioned procedures, including allowing the withdrawal of counsel and a continuance.  It is also evidenced by the time the court spent taking the motion under consideration and by the content of the trial court's judgment entry denying Appellant's plea withdrawal motion, wherein the court set forth the factors and made findings as to each (as discussed supra in our Statement of the Case).

**{¶26}**  Finally, although the state's case may not have been prejudiced by plea withdrawal, no one factor is dispositive.  *See, e.g., Morris*, 7th Dist. No. 131 MA 19 at ¶ 22; *State v. LaBooth*, 7th Dist. Mahoning No. 15 MA 0044, 2017-Ohio-1262, ¶ 9 ("the

state's failure to allege prejudice does not require that a motion to withdraw must be granted"). M oreover, in consideration of Appellant's entering into the plea agreement, the prosecution withdrew a motion to revoke bond and allowed Appellant to remain free on bond pending sentencing.

**{¶27}** In conclusion, Appellant's contention revolves around the lack of prejudice to the state's case combined with Appellant's claim that he did not understand that he could argue that he lacked a "purpose to hinder" the investigation of the shooter when he "[c]ommunicate[d] false information to any person" (or that he lacked a "purpose to impair the value or availability of evidence" when he took the phone, for the charge dismissed under the plea agreement). Considering the totality of the facts and circumstances, it was not unreasonable, arbitrary, or unconscionable for the trial court to weigh the various factors as balancing in favor of the state. The trial court could conclude there was not a reasonable and legitimate basis for the motion and exercise its sound discretion to deny appellant's pre-sentence plea withdrawal motion.

**{¶28}** In accordance, Appellant's sole assignment of error is overruled, and the judgment of the trial court is affirmed.

Waite, P.J., concurs.

Cannon, J., concurs.

Case No. 19 MA 0115

[Cite as *State v. Grabe*, 2020-Ohio-4435.]

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**